Opinion issued June 10, 2004.















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00203-CR
NO. 01-03-00204-CR




ROBERT GAMBLE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 937904
Trial Court Cause No. 937905




MEMORANDUM OPINION

          In two separate indictments, the State charged appellant Robert Gamble with
separate felony offenses of burglary of a habitation. Each indictment included an
allegation that Gamble used or exhibited a deadly weapon during the commission of
the offense and a punishment enhancement paragraph alleging that he previously had
been convicted of a felony offense. Gamble entered pleas of not guilty to the charged
offenses, and true to the punishment enhancement paragraphs. A single jury
convicted Gamble of both burglaries, found the enhancement paragraphs true, and
found that Gamble used a deadly weapon while committing both offenses. The jury
sentenced Gamble to 30 years confinement in cause number 937904, and 17 years
confinement in cause number 937905, to run concurrently.
          Gamble challenges the legal and factual sufficiency of the evidence supporting
his convictions. He further contends that the trial court erred in allowing the State to
present inadmissible hearsay to the jury, and that his trial counsel failed to render
effective assistance of counsel. We affirm.
Background
          Gamble and Belinda Garcia were in a dating relationship that ended in
December 2001. After Garcia’s relationship with Gamble ended, she and Desmond
Stewart began living together in Garcia’s residence. On April 7, 2002, Gamble
entered Garcia’s residence, assaulted Garcia while threatening her with a knife, and
then stabbed Stewart with the knife.
          Gamble first contends that the evidence is legally and factually insufficient to
support his convictions. Specifically, he contends that there was no evidence that he
entered the residence with intent to assault Garcia and Stewart, because “he entered
the condo under a claim of right as a sometimes occupant, . . . [he] cannot be held to
be a burglar.” Gamble further contends that the State’s witnesses did not rebut his
testimony that he used the knife to defend himself, and that he entered the residence
with a key to retrieve his own personal property.
Legal and Factual Sufficiency of the Evidence
          When determining whether a conviction is supported by legally sufficient
evidence, we view the evidence in the light most favorable to the prosecution, and
determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155 (Tex. App.—Houston [1st
Dist.] 1997, no pet.). We consider all of the evidence presented at trial, but we do not
re-weigh the evidence or substitute our judgment for that of the jury. King, 29
S.W.3d at 562. The jury, as the trier of fact, is the sole judge of the credibility of the
witnesses. Obigbo v. State, 6 S.W.3d 299, 304 (Tex. App.—Dallas 1999, pet. ref’d).
          We review the factual sufficiency of the evidence by reviewing all of the
evidence as a whole neutrally, not in the light most favorable to the prosecution. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). As the Texas Court of
Criminal Appeals recently has held: 
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? However,
there are two ways in which the evidence may be insufficient. First,
when considered by itself, evidence supporting the verdict may be too
weak to support the finding of guilt beyond a reasonable doubt. Second,
there may be both evidence supporting the verdict and evidence contrary
to the verdict. Weighing all evidence under this balancing scale, the
contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty verdict
should not stand. This standard acknowledges that evidence of guilt can
“preponderate” in favor of conviction but still be insufficient to prove
the elements of the crime beyond a reasonable doubt. Stated another
way, evidence supporting guilt can “outweigh” the contrary proof and
still be factually insufficient under a beyond-a-reasonable-doubt
standard. 

Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21,
2004). In a factual sufficiency review, we may not substitute our own judgment for
that of the finder of fact. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).
The Charged Offenses
          A person commits burglary if, without the effective consent of the owner, that
person enters a habitation with the intent to commit a felony, theft, or assault. Tex.
Pen. Code Ann. § 31.02 (Vernon 2003). A person commits assault by intentionally,
knowingly, or recklessly causing bodily injury to another, by intentionally or
knowingly threatening another with imminent bodily injury, or by intentionally or
knowingly causing physical contact with another when the person knows that the
other will regard the contact as offensive or provocative. Tex. Pen. Code Ann. §
22.01 (Vernon Supp. 2004). An aggravated assault occurs if, while committing an
assault, a person causes serious bodily injury to another or uses or exhibits a deadly
weapon. Tex. Pen. Code Ann. § 22.02 (Vernon Supp. 2004). A deadly weapon is
a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or anything that in the manner of use or
intended use is capable of causing death or serious bodily injury. Tex. Pen. Code
Ann. § 1.07(a)(17) (Vernon Supp. 2004).
The Evidence at Trial
          Garcia testified that she and Stewart lived together in a residence with her
children. On April 7, 2002, Garcia locked the doors to her residence and to her
upstairs bedroom before going to bed, around midnight. Garcia was awakened by a
loud noise and then saw Gamble enter her bedroom and charge at her with a knife in
his hand. Gamble pulled Garcia out of bed by her hair and she fell to the floor,
whereupon Gamble repeatedly kicked her. Garcia attempted to call 911, but Gamble
grabbed the telephone from her hands and held his knife to her neck.
          Stewart testified that he saw Gamble’s silhouette in the doorway, and that
Gamble held a shiny object in his hand. Stewart “attacked the silhouette.” He and
Gamble fought in the bedroom and hallway, and Gamble pushed Stewart down the
stairs. Stewart ran into the parking area, thinking that Gamble was outside, and then
realized that he was bleeding profusely from several stab wounds. Stewart began to
experience difficulty breathing, and called for help. Gamble found Stewart sitting on
the ground in the parking lot attempting to catch his breath, and while holding the
knife, pursued him. Stewart evaded Gamble until another individual arrived.
          Roger Espinoza, a Houston Police Department (“HPD”) patrol officer,
responded to the incident. He interviewed Garcia, who informed him that she did not
want Gamble to enter her home, and that he had not been invited. Espinoza observed
bruises on Garcia’s chin and above her left buttock. Garcia informed Espinoza that
she received the bruise on her chin when Gamble struck her with his fist, and the
bruise above her left buttock when Gamble kicked her while she lay on the floor. 
Espinoza entered the residence, and determined that the door leading into Garcia’s
bedroom had been forced open. He observed damage to the doorframe, and a hole
in the sheetrock on the interior of Garcia’s bedroom caused by opening the door with
such force that the doorknob broke through the wall. According to Espinoza, the
bedroom was in a “state of chaos.” He observed that the bed and the carpet were
soaked with blood.
          Officer D.C. Lambright, an HPD crime scene investigator, examined the sliding
glass door at the residence, and testified that he found numerous signs of forced entry. 
The screen had been removed, and Garcia had indicated that it was on its track earlier
that evening. Lambright located metal shavings along the entryway and observed that
the metal on the sliding door was bent, indicating that someone forced, pried, or
pulled the door open. Lambright has viewed many crime scenes, and described
Garcia’s residence as “a very brutal scene.”
          Gamble testified that he resides in the LaMarque/Texas City area. He admitted
that he was not invited, but nevertheless entered the residence through the front door
with a key. He climbed the stairs leading to Garcia’s bedroom, and knocked on the
door. Gamble testified that he heard both Garcia and Stewart through the bedroom
door, and, notwithstanding that the door was locked, he “pushed the door in.” 
Gamble explained, “Because sometime on the lock, when it be [sic] locked, you just
push it, it [sic] just opened. It been [sic] like that.” Gamble testified that Stewart hit
him several times with a baseball bat, and admitted that he “stuck him a couple of
times” with the knife in an attempt to defend himself. He explained that while being
hit with a baseball bat, he was able to pull a folding knife from his pocket and stab
Stewart with it. Gamble also admitted kicking Garcia, but his testimony was
inconsistent with respect to whether he kicked her upstairs while in her bedroom, or
downstairs. Gamble’s attorney questioned him regarding his purpose in entering the
residence that night, and Gamble explained that “Every weekend we take turns. 
Sometimes she come [sic] down [to his residence]. Sometimes I come [sic] up [to her
residence].” Gamble also justified his uninvited entry by explaining that he “had
clothes over there,” that he helped out in paying the bills, and that Garcia had his
income tax money. 
          We conclude that a rational trier of fact could have found the essential elements
of the charged offenses beyond a reasonable doubt and therefore conclude that the
evidence is legally sufficient to support Gamble’s two convictions. See King, 29
S.W.3d at 562. Gamble conceded at trial that he was not invited into Garcia’s
residence. The jury heard evidence that Garcia did not want Gamble to enter her
home. See Ellett v. State, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980) (testimony
by owner that appellant not given permission to enter building is sufficient to
establish absence of effective consent, even if entry through open door). In addition,
the State presented testimony that physical evidence indicated that the sliding glass
door to the residence had been forced open. Gamble admitted that he carried a knife
with him. While holding a knife, Gamble entered Garcia and Stewart’s bedroom by
forcing open the locked door with such force that he broke the doorframe and pushed
the doorknob through the sheetrock when it hit the wall. A rational jury could have
found from this evidence that Gamble entered the residence without consent or the
possessory right to enter and with the intent to assault the occupants. 
          Furthermore, upon a neutral view of the evidence both for and against the
jury’s findings, we conclude that the jury was rationally justified in finding guilt
beyond a reasonable doubt. Although Gamble contended that he had a right to be in
the residence and that he had no intent to assault Stewart or Garcia, by convicting
Gamble, the jury impliedly found him not credible in his assertions. We defer to the
jury to make credibility assessments of the witnesses. Gamble’s testimony that he
used a key to retrieve personal property and used the knife to defend himself is
inconsistent with Stewart and Garcia’s testimony. It is also inconsistent with the
physical evidence that someone removed the screen and forced open the sliding door. 
A jury may resolve inconsistent testimony by making credibility determinations of the
witnesses, and it was free to believe or disbelieve any portion of any witness’
testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We
therefore conclude that the evidence is factually sufficient to support Gamble’s two
convictions.
Hearsay
          Gamble further contends that the trial court erred in allowing Officer Espinoza
to testify, over a hearsay objection, that Garcia told Espinoza that her former
boyfriend had entered her residence through a sliding glass door. Gamble submits
that Garcia’s statement did not fall within the excited utterance exception to the
hearsay rule because Garcia provided a long and detailed statement to Espinoza,
which evidences that she “was not so upset that she could not reply with . . . complete
accuracy and completeness.”



          An excited utterance is “a statement relating to a startling event or condition
made while the declarant was under the stress of excitement caused by the event or
condition.” Tex. R. Evid. 803(2). A trial court’s decision to admit an out of court
statement as an excited utterance is reviewed for abuse of discretion. King v. State,
953 S.W.2d 266, 269 n. 4 (Tex. Crim. App. 1997). In order to constitute an excited
utterance, (1) the statement must be the product of a startling occurrence; (2) the
declarant must have been dominated by the emotion, excitement, fear, or pain of the
occurrence; and (3) the statement must be related to the circumstances of the startling
occurrence. Couchman v. State, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999,
pet. ref’d). The critical focus is “whether the declarant was still dominated by the
emotions, excitement, fear, or pain of the event” at the time of their statement. 
Salazar v. State, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001); see also Hawkins v.
State, 792 S.W.2d 491, 495 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (when
determining admissibility of statement under excited utterance exception to hearsay
rule, element of time is important, but not controlling factor).
          Officer Espinoza testified that he arrived to find a very bloody scene, with
emergency personnel from the Houston Fire Department providing medical care to
Stewart. Stewart had been beaten, was covered in blood, and had sustained stab
wounds on his chest, back, and legs.
          After speaking briefly with Stewart, Espinoza found Garcia. Espinoza testified
that Garcia, was “very, very nervous” and “very much shook up by the ordeal that
went on that night.” Garcia was “crying profusely, [and she was] trying to tell me
what happened in between sobs.” Garcia was very upset and very excited.
          Based upon Espinoza’s description of the crime scene, his observations
concerning Stewart’s condition and injuries, and his description of Garcia’s emotional
state, the trial court reasonably could have found that the emotion, excitement, and
fear of the occurrence dominated Garcia when she made her statement, that it was the
product of that startling occurrence, and that it related to the circumstances of the
startling occurrence. See Couchman, 3 S.W.3d at 159. We therefore conclude that
the trial court did not abuse its discretion in allowing the statement.
Ineffective Assistance of Counsel
          Gamble contends that his trial counsel failed to render effective assistance
because his trial counsel: (1) made only one objection to the officer’s testimony
concerning statements made to him by Garcia and Stewart; (2) filed no pretrial
motions except for a request for funds to hire an investigator; and (3) failed to ask for
a motion to disregard and a motion for mistrial following his objection during the
State’s closing argument. We follow the two-pronged test announced in Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In order to prevail,
Gamble must prove that (1) his counsel’s representation was deficient; and (2) the
deficient performance was so serious that it prejudiced his defense. See id. We begin
our analysis with a strong presumption that counsel’s conduct is reasonable.
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Accordingly, the allegation of
ineffective assistance must be firmly founded and affirmatively demonstrated in the
record. Henderson v. State, 29 S.W.3d 616, 624 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d).
           In this case, Gamble did not file a motion for new trial. The record thus is
silent as to his trial counsel’s reasoning with regard to the State’s introduction of the
alleged inadmissible evidence, and to pretrial motions. Moreover, although Gamble
contends his trial counsel erred in failing to move for an instruction to disregard and
a mistrial during the State’s closing argument, he has not cited the record to support
his contention. We have reviewed the record and have not found any objection to the
State’s closing argument. Because the record gives no indication of the strategy or
reasons behind the decisions of Gamble’s counsel, to find that Gamble’s trial counsel
was ineffective would call for improper speculation. See Bone v. State 77 S.W.3d
828, 835 (Tex. Crim. App. 2002); Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet). We conclude that Gamble failed to rebut
the strong presumption that his trial counsel’s conduct was reasonable, and therefore
hold that he has not satisfied his burden in demonstrating that his trial counsel was
ineffective.
Conclusion
          We conclude that legally and factually sufficient evidence supports the verdict. 
We further conclude that the trial court did not abuse its discretion in the admission
of evidence, and that Gamble did not overcome the strong presumption that trial
counsel acted reasonably on his behalf. We therefore affirm the judgment of the trial
court.


                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish. Tex. R. App. P. 47.4.