IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00419-CR

 

Lynn Cornelius Releford,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 278th District Court

Leon County, Texas

Trial Court No. CM-05-70

 



MEMORANDUM  Opinion



 








          A jury convicted Lynn Cornelius
Releford of burglary of a habitation with the underlying felony offense of
aggravated assault and sentenced him to ninety-nine years’ imprisonment. 
Releford appeals in three issues complaining of the sufficiency of the evidence.
We will affirm. 

          We measure sufficiency of the evidence
against the elements of the offense as defined by the “hypothetically correct
jury charge” for the case.  Gollihar v. State, 46 S.W.3d 243, 252 (Tex.
Crim. App. 1997) (citing Malik v. State, 953 S.W.2d 234, 238 (Tex. Crim.
App. 1997)).  When reviewing a challenge to the legal sufficiency of the
evidence, we must determine whether, after viewing all the evidence in the
light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  Saxton
v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  The court may not
re-evaluate the weight and credibility of any evidence.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Inconsistencies in the testimony are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing a challenge to the factual
sufficiency of the evidence, we ask whether a neutral review of all the
evidence demonstrates either that the proof of guilt is so weak or that
conflicting evidence is so strong as to render the jury's verdict clearly wrong
and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
The court reviews the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compares it with the evidence
that tends to disprove that fact.  Johnson, 23 S.W.3d at 7 (quoting Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).  The appellate court
does not indulge in inferences or confine its view to evidence favoring one
side.  Rather, it looks at all the evidence on both sides and then makes a
predominantly intuitive judgment.  Id.  The nature of a factual
sufficiency review authorizes an appellate court, although to a very limited
degree, to act as the “thirteenth juror” to review the fact finder's weighing
of the evidence and disagree with the fact finder's determination.  Watson,
204 S.W.3d at 416-17 (citing Tibbs v. Florida, 457 U.S. 31, 42-3, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982), and Meraz v. State, 785 S.W.2d
146, 156 (Tex. Crim. App. 1990)).  If an appellate court concludes that the
evidence is factually insufficient, it must clearly state why it has reached
that conclusion.  Watson, 204 S.W.3d at 417; Johnson, 23 S.W.3d
at 7 (citing Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986)).

            Releford’s issues center on whether effective
consent to his entrance in the house had been given by anyone present at the
time of the assault or by either of the actual owners.  Releford was charged
with burglary for entering the house where his estranged wife Phyllis had been
staying and shooting her.  Phyllis and Releford had been separated for more
than two months after a previous incidence of domestic violence.

On the morning of the shooting, Releford called
to say he was coming by to deliver a Christmas gift.  Releford came in the
house and stayed for a few minutes without incident.  Phyllis and her adult nephew,
who also lived at the house, did not object to Releford coming.  After a few
minutes, Releford said he was going out to his car to get the gift but returned
instead with his shot gun and shot Phyllis.

Releford claims that by allowing him into the
house, Phyllis and her family approved of his presence, thereby negating the
element of entering without consent.  See Tex. Pen. Code Ann. § 30.02 (Vernon 2003).  The State
contends that any consent given was not effective.  See Tex. Pen. Code Ann. § 1.07(a)(19)
(Vernon Supp. 2006) (“consent is not effective if … (A) induced by force,
threat, or fraud.”).

Releford’s third issue complains of a fatal
variance between the indictment and the proof at trial.  In a variance situation,
the State has proven guilt of the crime, but in a manner of commission that differs
from that described in the indictment.  Gollihar, 46 S.W.3d at 246.  A
claim of variance is an issue of legal sufficiency.  Id.  The
hypothetically correct jury charge, against which the evidence is measured, “accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability and adequately describes the particular offense for which
the defendant was tried.”  Id. at 253 (citing Malik, 953 S.W.2d
at 240).

Only a “material” variance between the
indictment and proof warrants reversal.  Gollihar, 46 S.W.3d at 257.  Therefore,
the hypothetically correct jury charge includes material variances but excludes
immaterial ones.  Fuller v. State, 73 S.W.3d 250, 253 (Tex. Crim. App.
2002).  In determining if a variance is material, we ask two questions:
“whether the indictment, as written, informed the defendant of the charge
against him sufficiently to allow him to prepare an adequate defense at trial,
and whether prosecution under the deficiently drafted indictment would subject
the defendant to the risk of being prosecuted later for the same crime.”  Id. (citing United States v. Sprick, 233 F.3d 845, 853 (5th Cir.
2000)).

          Releford argues the proof offered at
trial centered on whether Phyllis consented to his entering the home.  However,
the indictment alleged that Releford entered without the consent of Anthony
Sterns, the actual owner of the house.  Sterns is Phyllis’s brother-in-law, and
he had allowed her to live with him since she left Releford.

          While Releford is correct that the State
offered testimony regarding whether Phyllis or others had given effective
consent to his entering the house, the State also called Sterns himself to the
stand.  Sterns testified that Releford had not been welcome in the house since
Phyllis separated from him.  He further testified that he saw Releford the
morning of the shooting and had not invited or consented to Releford coming to
his house.  Sterns admitted that he never expressly stated Releford could not
come to the house.

          The actual name of the owner is not
included in the hypothetically correct jury charge because it is not a
statutory element of the offense.  Fuller, 73 S.W.2d at 253; see also
Tex. Pen. Code Ann. § 1.07(a)(22)
(defining the elements of an offense as “the forbidden conduct; required
culpability; required result; and negation of any exception”).  Releford makes
no argument that he was surprised either by Phyllis’s testimony regarding
consent or by Stern’s testimony.  He is in no danger of being prosecuted again
for the burglary of the same house.  See Gollihar, 46 S.W.3d at 258.  The
evidence here shows that not only was there not a material variance
between indictment and proof, but there was no variance.  An immaterial
variance is disregarded in a sufficiency review.  Id.  We overrule
Releford’s third issue.

Next, Releford complains there is legally and
factually insufficient evidence to prove that he entered the house without the
effective consent of the owner.  “Owner” is statutorily defined to include any
person with “a greater right to possession of the property than the actor.”  Tex. Pen. Code Ann. § 1.07(a)(35)(A) (Vernon Supp. 2006).  Though the indictment alleged Releford entered without the consent of
Sterns, Phyllis, her nephew Wayne Scott, and Sterns’s wife Renay lived in the
home.  Thus, they have a greater right of possession than Releford and could
have consented to his entrance in the house.  See Alexander v. State,
753 S.W.2d 390, 392 (Tex. Crim. App. 1988).  There is no burden on the State
negate the consent of each party involved, but rather it is incumbent on the
defendant to raise the issue of consent defensively.  Fletcher v. State,
396 S.W.2d 393, 395-96 (Tex. Crim. App. 1965).[1]

          On the morning of the shooting,
Releford called and said he was stopping by to bring a gift to Phyllis’s
granddaughter.  Phyllis testified that about five minutes later, he came in the
back door without knocking.  Releford went into the living room with Phyllis’s granddaughter
and Scott.  Scott told Releford not to touch Phyllis again, and Releford said
he had made a mistake promising he would not hit Phyllis again.  Releford then told
Phyllis he wanted her to live in their mobile home.  Phyllis agreed, and
Releford said he going to his car to get the gift.  He returned and threw two
pairs of underwear at Phyllis accusing her of cheating on him.  Releford then displayed
a shot gun, pointed it at Phyllis, and shot her in the chest.

The Penal Code does not require forced entry to
support the charge of burglary.  Ellett v. State 607 S.W.2d 545, 549
(Tex. Crim. App. 1980).  Also, a marital relationship alone does not authorize
a spouse to enter an estranged spouse's residence.  Stanley v. State,
631 S.W.2d 751, 753 (Tex. Crim. App. 1982); Gomez v. State, 905 S.W.2d
735, 741 (Tex. App. 1995).  The definition of effective consent excludes
consent induced by threat, force, or fraud.  Tex.
Pen. Code Ann. § 1.07(a)(19)(A).  Under this definition, even “one who
enters through an open door” could do so without effective consent.  Ellett,
607 S.W.2d at 550.

Releford relies on a Third Court of Appeals case
holding that the State failed to prove lack of consent where the victim invited
the defendant in his apartment.  Eppinger v. State, 800 S.W.2d 652 (Tex. App.—Austin 1990 pet. ref’d).  However, Eppinger involved no fraud or deception
in gaining consent.  Id. at 654.  Eppinger knocked on the door and the victim
told him to enter.  The Court specifically noted that consent would have been
ineffective if the defendant had knocked on door, asked for a cigarette, and
once inside stole money.  Id; see also Gordon v. State, 633
S.W.2d 872 (Tex. Crim. App. 1982) (finding that consent was secured by fraud
where defendant entered on the pretense of needing to use the phone).  In this
case, the evidence is sufficient to show that Phyllis’s and Scott’s consent for
Releford to come in the house was ineffective because it was procured by
Releford’s fraudulent statement that he was there to deliver a Christmas gift. 
See Gordon, 633 S.W.2d at 875.

          Finally, Releford argues that Sterns
and Renay each consented to his entrance.  Neither was present during the shooting.
 Renay allowed Releford in the house the day before to get a plate of food.  She
did not testify at trial.  Sterns had a conversation with Releford the morning
of the shooting but said he never consented to Releford going in his house.

          Consent given to an acquaintance to
enter and even stay at a house is not effective consent to enter for all
purposes at all times.  See Rangel v. State, 179 S.W.3d 64, 69 (Tex.
App.—San Antonio 2005, pet. ref’d).  The fact that the previous day, Renay
briefly allowed Releford in the house does not bear on whether he had
permission to enter on the day of the shooting.  See In re D.J.H., 186
S.W.3d 163, 165 (Tex. App.—Fort Worth 2006, pet. denied) (conviction for
criminal trespass upheld where minor reentered the house after having left for
the night).  Additionally, Releford attempts to place the burden on the State
to negate Renay’s consent when neither side called her as a witness.  Other
than the person named in the indictment as owner, “the State was not required
to allege or prove want of consent of any other party claimed to have authority
to give consent …, this being purely a matter of defense.”  Fletcher,
396 S.W.2d at 395-396.

Releford never argued that he had permission to
come and go as he pleased from the Sternses’ house.  In fact, Sterns testified
that Releford was not allowed in the house.  While Sterns never expressly told
Releford he could not come to the house, no magic words are required to negate
consent.  Prescott v. State, 610 S.W.2d 760, 763 (Tex. Crim. App. 1981).

When viewed in the light most favorable to the
verdict, there is legally sufficient evidence to find that Releford did not
have effective consent from any party involved.  See Saxton, 804 S.W.2d at
914.  Further, a neutral review of all the evidence demonstrates neither that
the proof of guilt is so weak nor that conflicting evidence is so strong as to
render the jury's verdict clearly wrong and manifestly unjust.  See Watson,
204 S.W.3d at 414-15.  We overrule Releford’s claim that the evidence is
legally and factually insufficient to show lack of consent.  Having overruled
each of Releford’s issues, we affirm the conviction.

 

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,                                                 

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed February 28, 2007

Do not publish

[CRPM]









[1]           Despite having raised the issue of
consent with each witness and having moved for a directed verdict on that
issue, Releford failed to object to the jury charge which stated that Releford
could be found guilty if Anthony Stern did not consent to him being present at
the house. Releford does not now argue the jury charge issue on appeal.  As
previously stated the particular name of the owner of the habitation involved
in the burglary is not a statutory element of the offense, and therefore, is not
included in the hypothetically correct jury charge against which the
sufficiency of the evidence is measured.  Our sufficiency review will look at
consent as to each person Releford claimed consented to him being in the house.